## DEAL *v*. ANDERSON.

1. There was sufficient evidence to authorize the jury to return the verdict finding the property levied upon subject.

2. The court did not err in admitting in evidence a quitclaim deed made for the purpose of putting title in the grantee for the purpose of levy and sale of the property conveyed, executed on January 30, 1920, and "filed for record at 10 o'clock a. m., July 8, 1920, in the office of the clerk of the superior court;" nor in admitting in connection therewith the entry of levy of a fi. fa., in favor of the grantor in the deed, upon this land as the property of the defendant in fi. fa., the grantee, over the objection that "it did not affirmatively appear, as required by law, that the quitclaim deed was executed, filed, and recorded before the levy was made, it appearing from the quitclaim deed that the levy was made on the same day that the quitclaim deed was filed for record." The deed having been filed and recorded upon the same day upon which the levy was made, it will be presumed, in the absence of evidence to the contrary, that the filing and record were prior to the making of the levy.

3. The objection to the evidence last referred to, that the quitclaim deed was "filed and recorded and said levy was made more than ten years after the land was sold by the vendor to the claimant in this case, and that the claimant was not a party to the proceedings upon which the execution was levied, and had no notice of any claim or lien by the plaintiff," was without merit. The question whether plaintiff's claim of title by prescription had ripened into good title was one to be determined under the evidence in the case.

4. The plaintiff in fi. fa., who was the purchaser of the land from a common grantor of herself and the claimant, was permitted, over the objection that she was not a competent witness, to testify as follows: "I

---

Adverse Possession, 2 C. J. p. 276, n. 59.
Appeal and Error, 4 C. J. p. 975, n. 88; p. 978, n. 4; p. 982, n. 44.
Executions, 23 C. J. p. 599, n. 63, 65, 66; p. 602, n. 30; p. 603, n. 57.
Trial, 38 Cyc. p. 1578, n. 37.

knew W. U. Rogers in his lifetime; he was my first cousin. He borrowed $799.25 from me. He gave me a deed as security, and also gave me a note. This is the note he gave me, and this is the deed" (the warranty deed from W. U. Rogers to Mrs. Alice Anderson, made in 1908, and specified in the evidence). "W. U. Rogers never paid me back that money; still owes it." Whether or not the plaintiff, under the facts of the case, was competent to testify to the facts narrated, the admission of this evidence was not hurtful in view of the other evidence, especially the distinct admission made in the suit filed by the claimant and others against the Glenville Bank (which is set forth in the statement of facts), wherein it was alleged that the plaintiff in fi. fa. was the owner of the land, that Rogers, the common grantor, had conveyed it to her to secure a sum of money which he had procured from her, that this money had never been paid, and that "Mrs. Alice Anderson is the true and rightful owner of the tract of land as security for this money, which amounted to some $700 or $800· or other large sum."

5. The court did not err in refusing to dismiss the levy upon motion of the claimant. The evidence made a prima facie case for the plaintiff; and whether the case as thus made was overcome or not under the evidence was a question for the jury.

6. The copy of the decree cancelling a quitclaim deed from the plaintiff in fi. fa. to the original grantor was revelant and material, and was not inadmissible upon the ground that the claimant had not been a party to the proceedings for the cancellation of the deed.

7. In view of all the evidence, a verdict finding that the claimant had a title by prescription was not demanded.

No. 5905. DECEMBER 22, 1927.

Claim. Before Judge Highsmith. Appling superior court. December 29, 1926.

*H. L. Williams* and *W. H. Watson,* for plaintiff in error.

*Clark & Gibbs* and *C. H. Parker,* contra.

BECK, P. J. An execution issued from Tattnall superior court in favor of Mrs. Alice Anderson against W. U. Rogers, for the principal sum of $1456.60, besides interest and attorney's fees, was levied upon a certain tract of land, to wit, the east half of land lot No. 200 in the 4th land district of Appling County, containing 292 acres, more or less, as the property of the defendant in fi. fa. J. C. Deal interposed a claim. The date of the fi. fa. was January 15, 1917, and that of the levy March 2, 1925. The issue made by the levy and the claim came on for trial, and the jury returned a verdict finding the land subject. The claimant made a motion for new trial, which was overruled, and he excepted.

1. We are of the opinion that the jury were authorized to return the verdict. In holding that the evidence authorized the

27

verdict, of course facts which the jury were authorized to find as true are considered as established. The evidence shows that the claimant bought the land in question from W. U. Rogers, of Tattnall County, for a consideration of $6000, and received from the vendor a bond for title dated October 3, 1910. Part of the purchase-price was paid in cash, and promissory notes were given for the balance, payable December 10, 1910, December 1, 1911, and December 1, 1912. These notes were for $2000 each, but they were partly in payment for other lands in addition to that in controversy. The bond for title was recorded February 21, 1911, and the claimant went into possession of the land. But it also appears that on January 21, 1908, Rogers executed to Mrs. Alice Anderson a deed to the land in controversy, to secure the payment of a debt of $799.25. This deed was recorded February 8, 1908. Rogers indorsed and transferred the purchase-money notes of Deal to the Glennville Bank, of Tattnall County, Georgia. Afterwards the bank brought suit against the claimant and obtained a judgment on the notes, and Rogers was sued as indorser in the same action. In order that the bank might levy on the land it became necessary that Rogers file a quitclaim deed placing title to the land in Deal for the purpose of levy and sale. Rogers, knowing that he had parted with the title to the land, procured a quitclaim deed from Mrs. Anderson to himself on August 1, 1914, and had it recorded on August 26, 1914. On August 4, 1914, a quitclaim deed from Rogers to the claimant was placed upon record for the purpose of having the fi. fa. in favor of the bank levied, and the levy was made. The land was advertised for sale while the quitclaim deed from Mrs. Anderson to Rogers was on record in Appling County. While the land was being advertised for sale, J. C., H. P., D. C., and C. D. Deal (J. C. Deal having transferred his bond for title to the three others named) filed a petition for injunction in Tattnall superior court on December 6, 1915, alleging, among other things, that "Your petitioners show that on October 1, 1910, J. C. Deal made and delivered to W. U. Rogers three promissory notes for the sum of $2000, and payable on the 10th day of December, 1910, December 1st, 1911, December 1st, 1912, respectively, with interest from date, at the rate of eight per cent. per annum. Said notes were given for the purchase-money of lot of land number 201, containing 490 acres, and the

east half of lot of land number 200, consisting of 245 acres, both of said lots lying in the 4th district of Appling County, Georgia; that on the 3rd day of October, 1910, the said W. U. Rogers made and executed to the said J. C. Deal a bond for title obligating himself, upon the payment of the above-described promissory notes, to make and execute to the said J. C. Deal good and sufficient warranty title to the above-described tracts of land, free from all encumbrances, and that he had good title to the same. Your petitioners further show that with respect to lot of land number 200 the said W. U. Rogers conveyed this property to Mrs. Alice Anderson as security for a sum of money which he had procured from her, and that said sum of money has never been repaid, and that the said Mrs. Alice Anderson is the true and rightful owner of said tract of land as security for said money, which amounted to some $700 or $800, or other large sum." This petition was sworn to by all the petitioners, including J. C. Deal, the claimant. While it was pending, Mrs. Anderson, on December 12, 1916, filed a petition in Tattnall superior court, seeking to have the quitclaim deed dated August 14, 1914, from herself to Rogers, canceled upon the ground that the same was obtained through fraud. This last case was tried and resulted in a verdict and decree in favor of Mrs. Anderson for cancellation of the deed from herself to Rogers; and a certified copy of the decree was ordered to be placed upon the records of Appling County, Georgia, and this was done on March 22, 1918. In the meantime, pending all this litigation Mrs. Anderson brought suit and obtained a judgment on January 5, 1917, upon the original $799.25 note. An execution issued on this judgment was placed upon the general execution docket of Appling County. In the meantime the bank made another attempt to sell the land, based on its execution; and J. C. Deal again filed another petition for injunction, alleging that the land was levied on as his property and was to be sold to satisfy the bank's judgment and execution against him for $3732 principal, and $530 interest; and that there was due on the execution, on May 17, 1918, $3543.20. Pending this litigation Rogers died, and J. C. Beasley was appointed administrator of his estate. After the death of Rogers, Mrs. Anderson obtained her judgment cancelling the deed from herself to Rogers, and a judgment based upon a promissory note to secure the payment of which Rogers

had executed the first deed above mentioned. In order that she might levy her fi. fa. upon the land Mrs. Anderson filed and had recorded, July 8, 1920, a quitclaim deed to the land in controversy, placing the title in Beasley as administrator of the estate of Rogers; on which levy Beasley filed a claim.

The statement of facts is somewhat extended, but all are essential; and when considered, they show clearly that the verdict finding the property subject was authorized, if not demanded by the evidence. The title to the land for the purpose of securing a debt passed into Mrs. Anderson two years before J. C. Deal bought from Rogers and received his bond for title. There is evidence to show that J. C. Deal had notice of the fact that the deed from Rogers to Mrs. Anderson, though an absolute warranty deed in form, was made for the purpose of securing a debt. The jury were also authorized to find that while Mrs. Anderson quitclaimed the property back to Rogers, she subsequently obtained a decree annulling this conveyance because it had been obtained by fraud. If the claimant, between the date of the quitclaim deed from Mrs. Anderson to Rogers and the date of the judgment annulling the deed or the filing of suit to have it annuled, had completed the payment of the purchase-money, it might be that he would have had a complete equitable title to the land. But no payments were made by him (as the jury had a right to find) between the date of Mrs. Anderson's quitclaim deed to Rogers and of her proceedings to have that deed annuled. On December 4, 1915, J. C. Deal brought his equitable suit against the Glennville Bank, in which are made the allegations set forth above, and among them is the positive statement that "Mrs. Anderson is the true owner of said tract of land [the land in question] as security for said money, which amounted to $700 or $800, or other large sum." In this petition filed by the claimant and others was a prayer that the Glennville Bank and W. U. Rogers be required to refund to petitioners the amount of money which they had paid upon the purchase-price of the land, "unless they shall perfect title thereto."

2-7. The rulings in headnotes 2 to 7 require no elaboration.

*Judgment affirmed. All the Justices concur.*