## KOHLHASE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10990.

United States Court of Appeals
Sixth Circuit
April 7, 1950.

332

Robert A. Littleton, Washington, D. C., for petitioner.

S. Dee Hanson, Washington, D. C. (Theron L. Caudle, Ellis N. Slack, Helen Goodner, and S. Dee Hanson, Washington, D. C., on the brief), for respondent.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner seeks a review of the order of the Tax Court of May 6, 1949, adjudging a transferee liability in income, declared value excess profits, and excess profits taxes in the sum of $8,462.36 with interest, for the calendar year 1943 and for the six months taxable period ending June 30, 1944.

The facts as stated by the Tax Court in 12 T.C. 725 are as follows: The Chattanooga Sash and Millwork Company, a corporation, filed its tax returns for 1943 with the Collector of Internal Revenue for Tennessee on March 15, 1944, and its returns for the six months period ending June 30, 1944 with the same Collector on September 20, 1944. Attached to the returns for the period ended June 30, 1944, was a letter to the Commissioner of Internal Revenue signed by the President and Treasurer of the Corporation containing the following:

"On June 30, 1944, the Chattanooga Sash and Millwork Company disposed of its assets, surrendered its charter, and ceased to function as a business entity.

"Attached to this letter are the final Income and Excess Profits Tax Returns of this Corporation.

"In view of the preceding facts we would like to have an immediate audit of these returns and a final determination of the Income Tax Liability of this Corporation in order that the stockholders may determine the correct taxable profit to be reported by them on their individual returns."

The Chattanooga Sash and Millwork Company surrendered its charter to the Secretary of State of the State of Tennessee on June 30, 1944. The petitioner as a stockholder received in the dissolution of that Company, in June 1944, assets having a value in excess of liabilities here in controversy. The notice of the transferee liability was mailed to the petitioner on May 14, 1947. The taxes in controversy have not been paid.

The only question involved is whether the letter (dated September 7, 1944) attached to the corporation's final returns filed on September 20, 1944 constituted an effective statutory "Request for prompt assessment," as provided by § 275(b) of the Internal Revenue Code, 26 U.S.C.A. § 275(b), which reads as follows:

"In the case of income received * * * by a corporation, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun, within eighteen months after written request therefor (filed after the return is made) * * * by the corporation, but not after the expiration of three years after the return was filed. This subsection shall not apply in the case of a corporation unless—

"(1) Such written request notifies the Commissioner that the corporation contemplates dissolution at or before the expiration of such 18 months' period; and

"(2) The dissolution is in good faith begun before the expiration of such 18 months' period; and

"(3) The dissolution is completed."
If the notice was sufficient the Commissioner's notice of transferee liability mailed to the taxpayer on May 14, 1947 was too late, as the period of limitation for assessment of any such liability of an initial transferee of the property of a taxpayer is one year after the expiration of the period of limitation for assessment against the taxpayer. § 311(b) (1) Internal Revenue Code, 26 U.S.C.A. § 311(b) (1). If the notice was not sufficient the assessment and collection of the transferee liability are not barred by such limited period of time and are valid. The Tax Court held that the letter of September 7, 1944 was not an effective statutory request as required by § 275(b) of the Code.

■ In support of that ruling, the Commissioner contends that the statute requires that the written request for prompt assessment be "filed after the return is made"; that there must be meticulous compliance by the taxpayer with all named conditions in order to secure the benefit of any statutory limitation, Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350; and that filing the written request contemporaneously with the filing of the return is not a filing "after the return is made." We recognize the soundness of the rule requiring precise compliance with all of the specified statutory conditions, but we do not construe the statute under consideration as requiring a lapse of time between the filing of the return and the filing of the request for prompt assessment. We think it clearly means that such a request can not be filed before the return is made, and that it can be filed as soon as the return is made. If the written request calls attention to the return involved which has been filed, the purpose of the statute in that respect has been complied with. We fail to see any practical distinction between filing the return and immediately thereafter handing the written request for prompt assessment to the Collector's deputy, and attaching the written request to the return so that it is delivered to the deputy at the time, but not before, the return is filed. The applicable authorities support this view. Maffitt v. Becker, 8 Cir., 65 F.2d 880; Beverly Wall Paper Co. v. Commissioner of Internal Revenue, 3 Cir., 98 F.2d 211; White v. United States, 22 F.Supp. 821, 86 Ct.Cl. 728. Nor did the Tax Court rely upon the construction of the statute urged by the Commissioner.

The Commissioner also urges in support of the ruling that the request was insufficient because (1) it did not cite specifically § 275(b) as the statute under which the request was made; (2) the letter requested "an immediate audit" and did not request the "assessment" referred to by the statute, and (3) the request did not refer to the taxes for 1943. The Tax Court held that it was probably not fatal for the

letter not to refer specifically to § 275(b) or to use the word "assessment," but that its failure in such respects did not put the Commissioner on reasonable notice that the provisions of that section were being invoked; that, in its opinion, based upon all the facts, the letter was not sufficient to constitute a request for prompt assessment under § 275(b); and that the Commissioner acted within reason in not so regarding it.

■ We disagree with that conclusion. Section 29.275-1 of Treasury Regulations 111 provides the test to be applied to the sufficiency of such a notice. It provides— "The request, in order to be effective, must be made after the return is filed and *must be in such language* as to make it clear to the Commissioner that it is desired to take advantage of the provisions of § 275 (b)." (Emphasis added.) This test does not make it necessary that the section of the statute be referred to by number or that the particular word "assessment" be used. Without at this time passing on the sufficiency of the words used in the present case, it can not be seriously contended that a letter from a taxpayer to the Commissioner could not make it clear to the Commissioner that the taxpayer wanted to take advantage of the provisions of § 275(b) without specifically referring to the section number or using the word "assessment." [1] Accordingly, our real question is, as apparently agreed to by the Tax Court, not whether the letter mentioned the specific section of the statute or used the word assessment, but whether it was couched in such language as to make it clear to the Commissioner what available procedure the taxpayer was invoking.

■ The letter of September 7, 1944 advised the Commissioner that the corporation had "disposed of its assets, surrendered its charter and ceased to function as a business entity," and that the returns to which it was attached was the final income and excess-profits tax returns. This was unequivocal notice to the Commissioner that the corporation was dissolved and that it was making its final report on its tax liability. In addition to seeking for an immediate audit of the returns it specifically asked for "a final determination of the Income Tax liability of this corporation." The phrases *"immediate* audit" and *"final* determination" (emphasis added) appear to us to be stronger phraseology than the words "Request for prompt assessment" as used in the statute. The Commissioner was, of course, familiar with § 275(b), and with its purpose, namely, "to enable such corporations to wind up their affairs and distribute the assets without being confronted with the uncertainty of a demand which might later be made for federal taxes." White v. United States, supra, 22 F.Supp. at page 827. The opinion in that case quotes with approval the report of the Ways and Means Committee, considering the revenue bill of 1928, in which the section was first contained. In discussing the section the report said: "In the case of a corporation about to dissolve, the prompt determination of tax liability becomes particularly desirable." The essence of the statute is for a prompt determination of the tax liability of a corporation about to be dissolved. The Commissioner undoubtedly had proceeded under it many times in dealing with dissolved corporations. We fail to see how the Commissioner, with knowledge of that provision of the Internal Revenue Code and its purpose, could fail to realize that it was that section of the Code to which the corporate taxpayer was referring when it wrote that it had dissolved, the return being filed was its final return, and *in view of those facts* it was requesting "an immediate audit of these returns and a final determination of the Income Tax Liability of this Corporation." It appears to be the only section of the

---

1. A request such as the following would no doubt be sufficient:

"The taxpayer has dissolved; this is its final tax return. It requests that a final determination of its tax liabilities be promptly made under that section of the Internal Revenue Code dealing with a request by a corporation about to be dissolved for a prompt and final determination of its tax liabilities so that no such liability may be asserted or enforced against the taxpayer more than 18 months hereafter."

Internal Revenue Code that provides to a taxpayer preferential consideration of tax liability on returns which have been filed. This conclusion is in no way affected by the fact that the taxpayer gave as a reason for such request that the stockholders wanted to determine the correct taxable profit to be reported by them on their individual returns. Such a determination depended upon the final tax liability of the dissolved corporation. It also seems most reasonable to construe a request by a dissolved corporation for a final determination of its tax liability as applying to such liability for preceeding years as well as for the period covered by the last return.

The Commissioner points to the fact that petitioner, as president of the corporation, executed a document on February 18, 1947 consenting to the assessment and collection of the deficiencies for 1943 and the period ended June 30, 1944. He argues that such a waiver would not have been signed if petitioner believed at that time that the assessment was barred, and accordingly his present contention is an afterthought. This disregards the uncontradicted evidence on the point. John I. Foster, the accountant, who prepared the returns and the letter, testified that he had in mind § 275(b) when he wrote the letter and attached it to the return, and that he used the phraseology in an attempt to put the Commissioner on notice. He also testified that when the Internal Revenue Agent came to examine the returns in January 1947, he called the agent's attention to the letter and that he was late in making the examination, and that the agent later advised that if Mr. Kohlhase would not sign the document referred to he would have to proceed against the transferee. This was on or about March 14, 1947 which was just a few days before the statute ran against proceedings against a transferee. It was desirable to avoid proceedings against the transferee, and upon the agent's assurance that petitioner was not waiving any rights for a future protest against the transferee assessment, the petitioner executed the document on behalf of the corporation. The Commissioner's argument is not consistent with this evidence. As stated by the Tax Court, the waiver was ineffective if § 275(b) was applicable to the case, since it was executed after the time provided by § 275(b) had expired. Section 276 (b), Internal Revenue Code, 26 U.S.C.A. § 276(b); Elmer M. Melahn, 9 T.C. 769.

The judgment is reversed and the case remanded to the Tax Court for proceedings consistent herewith.